# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 19-682V

| | |
|---|---|
| LUCINDA LAIRD,<br><br>　　　　　　　Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>　　　　　　　Respondent. | Chief Special Master Corcoran<br><br>Filed: August 30, 2023 |

*Andrew Downing*, Downing, Allison & Jorgenson, Phoenix, AZ , for Petitioner.

*Lynn Schlie*, U.S. Department of Justice, Washington, DC, for Respondent.

**FACT RULING DISMISSING TABLE CLAIM**[1]

On May 8, 2019, Lucinda Laird filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that she suffered a left shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine administered to her on October 16, 2017. Pet. at 1, ECF No. 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons discussed below, I find it more likely than not that the onset of Petitioner's shoulder pain did not occur within 48 hours of vaccination, and that

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

Petitioner's Table claim is therefore **DISMISSED** (although the matter may remain viable as a causation-in-fact claim).

I.  **Relevant Procedural History**

After initiating her claim, Petitioner filed her vaccination and medical records, an affidavit, and a statement of completion. ECF Nos. 5, 7. In August 2019, Petitioner filed additional witness affidavits, medical records, and a supplemental statement of completion. ECF Nos. 10-12. Approximately one year later, on August 10, 2020, Respondent filed a status report indicating this case was not appropriate for compensation and requesting to file a Rule 4(c) Report. ECF No. 21.

Respondent filed his Rule 4(c) Report on October 9, 2020, arguing that Petitioner had failed to show a Table injury. ECF No. 22. Specifically, Respondent argued that Petitioner's medical records did not support the conclusion that the onset of her pain occurred within 48 hours of vaccination. *Id.* at 8. Respondent further argued that Petitioner's medical records reflect that when she did report shoulder pain, she noted the date of onset as *ten days* post vaccination. *Id.* at 8-9 (citing Ex. 5 at 209) (emphasis added). More so, Petitioner had a treater visit on November 15, 2017, one month post vaccination, but failed at that time to report shoulder pain during this visit, even though her pain had allegedly been interfering with her daily activities since vaccination. *Id.* at 9 (citing Ex. 5 at 225-29).

Petitioner was subsequently ordered to file any outstanding evidence on onset and another statement of completion. ECF No. 23. On August 17, 2021, Petitioner filed a supplemental affidavit, with additional documentation on September 28, 2021. ECF Nos. 26-27. One month later, on October 26, 2021, Petitioner filed a statement of completion. ECF No. 29.

In light of Petitioner's submissions, the parties were ordered to confer regarding informal resolution of this matter. Non-PDF Order, docketed Nov. 14, 2022. Almost immediately, one week later, on November 21, 2022, Respondent filed a status report indicating he was not amenable to informal resolution. ECF No. 34.

Petitioner subsequently filed a motion for a ruling on the record ("Motion") on February 17, 2023. ECF No. 37. Respondent filed his response to Petitioner's motion ("Response") on April 17, 2023. ECF No. 38. On April 24, 2023, Petitioner filed her reply ("Reply"). ECF No. 39. This matter is now ripe for consideration.

## II. Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19.

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014). The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### III.   Relevant Factual Evidence

On October 16, 2017, Petitioner (then 66 years old) received a flu vaccine in her left deltoid. Ex. 2 at 3. Her prior relevant medical history includes a right rotator cuff injury, right shoulder adhesive capsulitis, and right shoulder pain in February 2016, for which she treated with physical therapy ("PT") and a home exercise program ("HEP"). *See, e.g.*, Ex. 3 at 49-50.

Petitioner has submitted what appears to be a record of a $30.00 payment for acupuncture treatment she received on October 26, 2017 – ten days post vaccination. Ex. 12 at 2. The record does not contain encounter notes from the visit, reference the purpose of the treatment, or otherwise provide the date of onset of any alleged symptoms. Petitioner submitted a screenshot of a message from the acupuncture clinic reflecting that Petitioner's chart from the clinic had been damaged and/or lost. Ex. 11. Petitioner maintains, however, that this treatment was for her left shoulder pain. *See* Motion at 13.

In her affidavits (authored on April 22, 2019, and August 16, 2021), Petitioner attests that the "vaccination seemed to sting more that [sic] past shots and, the next day when [she] removed the band aid, the injection site was red and sore to the touch. It was already starting to get painful to move [her] arm." Ex. 1 ¶ 2; Ex. 10 ¶ 3. Then, "[r]oughly a week to ten days after the vaccination, the pain seemed worse. It was progressing, but [she] still felt like it would ultimately resolve on its own." Ex. 10 ¶ 4. And "[o]ver the next few weeks, the pain began to interfere with [her] daily routine and a restful sleep." Ex. 1 ¶ 3.

On November 15, 2017, Petitioner presented to her primary care physician ("PCP") Dr. Timothy Zuk, to follow up regarding her acne, hyperlipidemia, and hypothyroidism. Ex. 5 at 225. No complaints of shoulder pain were noted, however. *See id.* at 225-29. But Petitioner has endeavored to explain this omission in her supplemental affidavit. Ex. 10 ¶ 5. The purpose of this visit, she maintains was to refill a prescription, and it "was a very quick appointment." *Id.* Petitioner "actually believe[d she] mentioned [her] shoulder soreness to Dr. Zuk at this time, but it would have been in passing." *Id.* She was "not

surprise[d]" that the complaints were not documented in the encounter note. *Id.* "Again, [she] thought the shoulder complaints were something that would start to resolve any day." *Id.* Petitioner attests that "[b]y Thanksgiving, the pain was getting worse." Ex. 1 ¶ 3.

By the end of December, Petitioner's pain was "hindering [her] ability to do even the most basic of tasks, along with interfering with [her] sleep." Ex. 1 ¶ 5. She then went online "and looked at shoulder symptoms following vaccination. Frozen shoulder came up, and the sign [sic] and symptoms seemed to last for weeks or several months." *Id.* This "did not seem like something [she] needed to ask the doctor about since it was going to go away over time." *Id.* She also decided to use a HEP previously utilized for right shoulder problems, but "it provided [] very limited relief." *Id.* ¶ 6.

By February 2018, "after all else failed," Petitioner decided to seek medical treatment. Ex. 1 ¶ 7. However, she was unable to get an appointment with Dr. Zuk until April, so she saw a different treater in March 2018. *Id.*

This March 13, 2018 visit (occurring approximately five months post vaccination) is the next temporally-sequential medical record filed in this case. At this time, Petitioner presented to Dr. Christian Devaux complaining of pain and "worsening left shoulder stiffness over the past several months," which she reported had "started after she got her flu shot in Oct[ober]." Ex. 5 at 222. On physical examination, Petitioner exhibited normal rotator cuff strength but pain with internal rotation and abduction. *Id.* at 224. Petitioner was assessed with left shoulder pain that was "chronic." *Id.* at 225. Dr. Devaux suspected Petitioner "[m]ay have adhesive capsulitis," and referred her to PT. *Id.*

Petitioner had an initial PT evaluation on April 18, 2018. Ex. 5 at 1. The date of onset of her left shoulder pain was noted as "fall 2017." *Id.* at 4. Petitioner indicated that her "pain got worse and worse and worse" post vaccination. *Id.* The physical therapist's impression was frozen shoulder. *Id.* at 6. The following month, during a May 2, 2018 visit for Petitioner's unrelated breast cancer diagnosis, Petitioner's treater noted the onset of her frozen shoulder as "October 2017." *Id.* at 7.

On May 15, 2018, Petitioner finally returned to Dr. Zuk. Ex. 5 at 209. Dr. Zuk specifically noted that Petitioner's left shoulder pain had "started 10/17[,] 10 days after her flu shot." *Id.* at 210. In her supplemental affidavit, Petitioner attempts to explain this notation, maintaining that she had "reminded [Dr. Zuk] that the pain and range of motion loss had become more pronounced about ten days post vaccination. That was not the first onset of symptoms, however, and reading of the chart in that fashion would be an error." Ex. 10 ¶ 7. Petitioner continued PT and attended a total of twelve sessions through July 24, 2018, followed by a HEP. Ex. 5 at 54-119; Ex. 1 ¶ 13.

5

During a follow-up with Dr. Zuk on August 27, 2018, Dr. Zuk noted that Petitioner's left shoulder pain had been present "since October 2017 and followed a flu shot in the same month." Ex. 5 at 200.

Notes from an October 22, 2018 orthopedic visit show that Petitioner had now been experiencing shoulder pain for a year. Ex. 4 at 1. She reported that "she was given a flu shot and feels it was given way too high in her arm." *Id.* Petitioner noted this has happened before "and usually resolves." *Id.* She continued, "this time it is not resolving but [she] doesn't know if it's related. There was no specific injury and [the] pain came on gradually." *Id.* Petitioner was assessed with adhesive capsulitis of the left shoulder. *Id.* at 4. Petitioner resumed PT and continued through December 17, 2018, for a total of seventeen visits, with some improvement. Ex. 5 at 197. No additional medical records have been filed.

In addition to her own witness statements, Petitioner has submitted several witness letters[3] in support of her claim. The witness letters mention onset, but do not support Petitioner's argument that onset occurred within 48 hours of her vaccination. For instance, Petitioner's sister Nancy Laird wrote that she first spoke to Petitioner regarding her shoulder pain in "mid-November 2017." Ex. 6 at 1. Petitioner's friend Susan M. Leeson indicated that "[i]n fall 2017," she spoke to Petitioner regarding her annual flu shot and Petitioner told her that her arm "was unusually sore and that the injection site was very high on her arm. For weeks thereafter, she continued to mention [to Ms. Leeson] not only pain . . . but loss of mobility." Ex. 7 at 1. Additionally, Petitioner's friend Mary Kapka wrote that "[w]hen [she] asked" Petitioner "how her arm felt after the flu shot, [Petitioner] replied it hurt and felt inflamed[.]" Ex. 8 at 1.

## IV. Findings of Fact

A petitioner alleging a SIRVA claim must show that she experienced the first symptom or onset within 48 hours of vaccination (42 C.F.R. § 100.3(a)(XIV)(B)), and that her pain began within that same 48-hour period (42 C.F.R. § 100.3(c)(10)(ii) (QAI criteria)). Respondent argued that Petitioner is unable to meet this requirement because "the medical records do not establish that [P]etitioner suffered the first symptoms or manifestation of onset of a shoulder injury within forty-eight hours of her October 16, 2017 influenza vaccination." Response at 10.

There are a number of intertwined issues that collectively do not support a Table onset finding. First, there was a nearly five-month gap between Petitioner's vaccination and her first visit to treat her left shoulder injury on March 13, 2018. This in and of itself is

---

[3] These filings are not affidavits sworn to under oath but rather unsworn letters. *See* Exs. 6-8.

not dispositive, since I have found *greater* delays not to have undermined an otherwise-preponderantly-established showing of two-day onset. *See, e.g., Tenneson v. Sec'y of Health & Hum. Servs.*, No. 16-1664V, 2018 WL 3083140, at *5 (Fed. Cl. Spec. Mstr. Mar. 30, 2018), *mot. for rev. denied,* 142 Fed. Cl. 329 (2019) (finding a 48-hour onset of shoulder pain despite a nearly six-month delay in seeking treatment); *Williams v. Sec'y of Health & Hum. Servs.*, No. 17-830V, 2019 WL 1040410, at *9 (Fed. Cl. Spec. Mstr. Jan. 31, 2019) (noting a delay in seeking treatment for five-and-a-half months because a petitioner underestimated the severity of her shoulder injury). But it is unhelpful to Petitioner's argument regardless.

Second, the treatment gap problem is compounded by the fact that Petitioner had at least one[4] medical visit with treaters between her vaccination and the March 2018 visit, occurring approximately one month after Petitioner's vaccination. But the record from Petitioner's November 15, 2017 visit with her PCP is silent as to any shoulder symptoms Petitioner was allegedly experiencing at that time. Petitioner has offered some explanation for this omission, and it is true that the existence of an intervening record is not per se reason to find onset not met – but the fact that another *four months* passed thereafter, with no effort to treat pain that is purported to have been chronic and difficult to bear, further undermines contentions about onset that are based on representations made long after vaccination.

Finally, and what proves most detrimental to Petitioner's Table claim, is the fact that when the medical records began referencing the onset of her post-vaccination left shoulder pain, they indicated vaguely that her pain began "after" vaccination or in fall/October 2017, generally, not within 48 hours specifically. *See, e.g.*, Ex. 5 at 222 (a March 13, 2018 note indicating her pain "started after she got her flu shot in Oct[ober]"); Ex. 5 at 7 (a May 2, 2018 note documenting onset in "October 2017"); Ex. 5 at 200 (an August 27, 2018 note reflecting pain "since Oct[ober] 2017 and followed a flu shot in the same month.").

At the same time, Petitioner's medical records contain a specific reference to onset occurring more than 48 hours post vaccination. Petitioner's May 15, 2018 encounter notes indicate that the onset of her pain was in "10/17, 10 days after her flu shot." Ex. 5 at 210. While "10/17" is ambiguous, "10 days after her flu shot" is not. In fact, this notation provides context for a later visit notation from October 22, 2018, wherein Petitioner

---

[4] Petitioner also maintains that she sought acupuncture for her left shoulder pain on October 26, 2017, ten days post vaccination. However, the records for this visit were not filed, and thus there is no corroboration of Petitioner's statement as to the purpose of this visit. *See* Exs. 11-12. Further, Petitioner's medical records contain an October 27, 2017 note that Petitioner had an abnormal urine test positive for a UTI, for which Petitioner was prescribed an antibiotic. Ex. 5 at 328. There are no encounter notes for this date. Additionally, on November 2, 2017, Petitioner underwent additional labs but there is no corresponding visit record for this date. *Id.* at 311-12.

7

reported that her shoulder pain "came on gradually" and "[t]here was no specific injury[.]" Ex. 4 at 1.

The only other evidence supportive of a Table onset finding is contained in Petitioner's affidavit. But it alone cannot prove elements of Petitioner's claim. *See* Section 13(a)(1) (indicating the Vaccine Act expressly provides that a special master may not find that a petitioner meets the burden of proof "based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion."). Petitioner's medical records do not substantiate these allegations. *Compare* Ex. 5 at 225-29 (a November 15, 2017 medical record revealing no shoulder complaints), *with* Ex. 1 ¶ 3; Ex. 10 ¶ 5 (affidavits indicating her shoulder pain was interfering with her daily routine and sleep around that time, and that she did complain of shoulder pain in passing on November 15, 2017). And she has not otherwise persuasively explained the inconsistencies between her onset allegations and what the contemporaneous records show (*see*, e.g., Petitioner's argument that the notation that her pain began "10 days after her flu shot" should be interpreted to mean her pain "intensified" 10 days post vaccination (Ex. 10 ¶ 7)). I therefore do not find that her affidavits, authored later in time and in pursuit of litigation, outweigh medical records created closer in time to the injury in question that identify a gradual onset and/or one occurring no sooner than 10 days of her vaccination. *See, e.g.*, *Cucuras*, 993 F.2d at 1528; *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378 (Fed. Cir. 2021) (reiterating that "oral testimony in conflict with contemporaneous documentary evidence deserves little weight.").

At bottom, it is the overall mix of evidence herein that causes me to find Table onset cannot be preponderantly established. In other cases, delay in treatment and/or vagueness in onset references might tip the scales the other way – not so here. Nevertheless, a non-Table claim *could* be viable, and I therefore do not opt to dismiss the case in its entirety at this time. I urge the parties to make one final brief attempt at settlement, since the case will likely be transferred out of SPU shortly so that Petitioner can attempt to establish a causation-in-fact claim.

### Conclusion

Petitioner has not provided preponderant evidence that the onset of her shoulder pain occurred within 48 hours of vaccination. Accordingly, Petitioner's Table SIRVA claim is **DISMISSED.** Petitioner shall file a joint status report indicating that she has provided Respondent with a revised settlement demand for her off-Table claim (and one that takes into account litigative risk in attempting to prove a non-Table SIRVA that did not begin immediately post vaccination), and the parties' efforts towards informal resolution, **by no**

**later than Monday, October 16, 2023.** If the parties do not report progress in their efforts, the matter will likely be transferred out of SPU.

    **IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master
